COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia

MYLES TALBERT HYLTON

                                      MEMORANDUM OPINION[*] BY
v.          Record No. 2307-96-3       JUDGE DONALD W. LEMONS
                                           MARCH 16, 1999
CHERYL ANN PRICE HYLTON


              FROM THE CIRCUIT COURT OF THE CITY OF SALEM
                  Kenneth E. Trabue, Judge Designate

            Jim H. Guynn, Jr. (Myles T. Hylton, on
            briefs), for appellant.

            Charles B. Phillips (Phillips & Swanson, on
            brief), for appellee.


    Myles T. Hylton contends that the trial court erred in

failing to calculate the presumptive amount of child support;

imputing income to him; neglecting to provide a written

explanation for a deviation from the child support guidelines;

failing to grant his motion for a reduction in child support; and

ordering him to pay child support arrearage.  In addition, Hylton

argues that the court was biased against him, and abused its

discretion.  We hold that the trial court erred in failing to

calculate the presumptive amount of child support and neglecting

to provide a written explanation for a deviation from the child

support guidelines and remand for the purposes of compliance with

Code § 20-108.1(B).

_____

        [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

BACKGROUND

The parties, Myles T. Hylton and Cheryl P. Tilley (formerly Cheryl P. Hylton), were divorced on September 29, 1990. The parties have one child born of the marriage, Jessica K. Hylton, born April 2, 1986, whose support is the subject of this appeal.

Pursuant to an order of the Circuit Court of the City of Radford on September 29, 1990, Tilley was granted primary custody of Jessica, and Hylton was ordered to pay child support in the amount of $75 per week. On January 12, 1995, Tilley sought an increase in child support. On April 4, 1995, Hylton, a licensed attorney in the Commonwealth of Virginia, filed a pro se petition seeking a reduction of his child support obligation.

At the hearing on August 23, 1995, Tilley introduced evidence that Hylton had been terminated from a job with an annual salary of $50,000 at the law firm Kalbaugh, Pfund and Messersmith. Evidence was introduced to show that Hylton's termination was due to unexcused absences from work. Additionally, Tilley testified that she and Hylton had agreed to increase the amount of child support by $50 per month. Hylton did not appear at the hearing.

The court found an arrearage in child support payments in the amount of $825, and found Hylton in contempt of court for his failure to pay. The court took his punishment for the contempt under advisement, pending his payment of the arrearage. The court increased the amount of the child support payments from $75 per week to $625 per month. The court did, however, state that the

increase was to be without prejudice for Hylton to appear and present evidence to show the court that he was terminated from his $50,000 per year position through no fault of his own. Finally, the court assessed attorney's fees against Hylton in the amount of $1,000.

A second hearing was held on February 27, 1996. At this hearing, Hylton testified that he was currently self-employed and using office space in the law firm of Parvin, Wilson, Barnett & Guynn, where he had formerly been employed. He stated that he continued to actively seek employment, in both legal and non-legal positions. Hylton testified that his income for the previous nine months was $5,500, a monthly amount of $611.11. Hylton also argued that he was not in arrears for child support, submitting into evidence copies of cancelled checks and summary sheets that he alleged showed that he had paid $29,045 in support. He claimed that this amount constituted an overpayment of $3,395, not the $825 arrearage alleged by Tilley. The court did not rule on the issue of the support arrearage, instead "granting leave to the plaintiff and her attorney to review the copies of the defendant's cancelled checks and summary sheets submitted into evidence to determine if an overpayment had been made."

On May 2, 1996, Hylton filed a Petition for Modification of Support and Visitation. The order for the February 27, 1996 hearing was entered on June 6, 1996. In the order, the court confirmed the arrearages of $825 determined on August 23, 1995

and found that Hylton was in default on his $625 monthly payments in the amount of $3,425 for a total arrearage of $4,250. Finding that Hylton "is capable of earning sufficient income with which to pay the child support," the court ordered the $625 monthly support obligation to remain in effect. The court also ordered that the $1,000 award for attorney's fees be docketed as a judgment against Hylton.

Hylton filed objections in which he argued that he was not in arrears on his child support, that the court erred in failing to determine the presumptive amount of child support under Code § 20-108.1(B), and that the court erred further in failing to explain its deviation from the presumptive amount of the guidelines.

At the next hearing, held on June 6, 1996, Hylton again testified about what he claimed constituted a full disclosure of his current income and his ability to pay. He testified that his income for the first five months of 1996 was $5,000. The court noted that no payments had been made since the September 10, 1995 adjudication of an arrearage of $825. Tilley's counsel informed the court that he had reviewed the child support checks admitted into evidence on February 27, 1996 and that the arrearages remained.

The order for the June 6, 1996 hearing was entered on August 20, 1996. The court ordered payment of an arrearage of $5,975 as of May 25, 1996. The court ordered that the $625 per month

be paid and that Hylton pay the attorney's fees of $1,000 as stated in its June 6 order.

Hylton filed objections to the August 20 order, arguing that the court erred in failing to consider evidence he claims proved that he was not in arrears. Hylton again objected to the court's failure to determine the presumptive amount of child support, and its related failure to explain its deviation from the presumptive amount. Hylton argued that the court improperly imputed income to him, when his income had been involuntarily reduced. Hylton also objected to the imposition of the attorney's fees, and argued that the failure of the judge to recuse himself was motivated by a bias against him.

On appeal, Hylton argues that because his income was involuntarily reduced from $50,000 per year to approximately $1,000 per month, the court erred in failing to calculate the presumptive child support amount based upon his current income. Hylton argues that the trial court also erred in imputing income to him in the amount of $50,000 per year.

Hylton maintains that the "actions of the trial court constitute an abuse of discretion in the determining [of] the child support obligation, holding the defendant in contempt, and the awarding attorney's fees to [Tilley]." Hylton contends that although the court allowed him to appear and present evidence following its September 10, 1995 order at the hearings of February 27, 1996, and June 6, 1996, the court did not consider his evidence. He states that the court's failure to consider his

evidence resulted in a child support award not based upon his "then current earnings," which amounted to an abuse of its discretion.  Finally, he alleges that the court's order that he pay attorney's fees and be held in contempt for his failure to pay the arrearage was similarly an abuse of its discretion.

### I.   STATUTORY GUIDELINES

In determining the amount of child support, a trial court must first apply the child support guidelines of Code § 20-108.2 to determine the presumptively correct amount of child support. See Farley v. Liskey, 12 Va. App. 1, 401 S.E.2d 897 (1991).

> [A]fter determining the presumptive amount of support according to the schedule, the trial court may adjust the amount based on the factors found in Code §§ 20-107.2 and 20-108.1.  Deviations from the presumptive amount must be supported by written findings which state why the application of the guidelines in that particular case would be unjust or inappropriate.

Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991); Code § 20-108.1(B) ("[i]n order to rebut the presumption, the court shall make written findings in the order, which findings may be incorporated by reference, that the application of such guidelines would be unjust or inappropriate in a particular case").  A trial court's failure to provide sufficient explanation for a deviation from the presumptive amount from the guidelines is error.  See Pharo v. Pharo, 19 Va. App. 236, 450 S.E.2d 183 (1994).

Income may be imputed to an obligor "who is voluntarily unemployed or under-employed . . . ."  Code § 20-108.1(B)(3).  A

- 6 -

parent's incarceration may constitute voluntary unemployment. See Layman v. Layman, 25 Va. App. 365, 488 S.E.2d 658 (1997). Termination from employment that was due to that parent/employee's larceny from his employer may similarly be considered voluntary unemployment. See Edwards v. Lowry, 232 Va. 110, 348 S.E.2d 259 (1986). An obligor/parent seeking a reduction in the amount of his or her child support obligation "must . . . make a full and clear disclosure about his ability to pay, and he must show his claimed inability to pay is not due to his own voluntary act or because of his neglect." Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) (citations omitted).

At the hearing on August 23, 1995, the court heard evidence that Hylton had been terminated from his employment as a practicing attorney due to absenteeism. Tilley introduced uncontroverted evidence that at the time he was fired, Hylton was earning a salary of $50,000 per year. In its order dated September 10, 1995, the court ordered the amount of child support to increase from $325 per month to $625 per month, but ordered that the increase be made "without prejudice" for Hylton to "appear and present evidence that he was discharged from his former employment of $50,000 per year without fault on his part . . . ." At the hearing on February 27, 1996, the court heard testimony from Hylton about his current income as a self-employed attorney and his attempts to find employment in both legal and non-legal fields.

In its order dated June 6, 1996, the court ordered Hylton to pay child support in the amount of $625 per month, finding that he is "capable of earning sufficient income with which to pay the child support." By its final order of August 20, 1996, the court again ordered child support of $625 per month. The trial court's finding that Hylton's absenteeism resulted in his termination and that, consequently, his unemployment was "voluntary," was not error.

However, the trial court failed to determine the presumptively correct amount of child support and did not make written findings in the order to support its deviation from the guidelines. In Hiner v. Hadeed, 15 Va. App. 575, 581-82, 425 S.E.2d 811, 815 (1993), we said,

> [o]nly if trial judges follow the statutory requirements will Virginia child support awards conform to the federal and state legislative mandates designed to create uniformity in support awards between parents and children similarly situated. Trial judges must make the requisite specific written findings, not solely for the purposes of appellate review, but, more important, to enable trial judges in future hearings to decide whether and how to increase, decrease, or terminate support. Only by having specific written findings will trial judges in subsequent proceedings be able to make informed decisions on how a change in circumstances may justify modification or may justify continued deviation from the guidelines.

We, therefore, reverse and remand this case to the trial court for compliance with Code §§ 20-108.1 and 20-108.2. If the

evidence before the court is sufficient, no additional evidence need be taken to make appropriate findings in the order.

## II.  ARREARAGES

Hylton argues that the trial court erred in finding that he was in arrears in his child support payments.  Because the arrearages in the court's August 20, 1996 order are based upon the trial court's calculation of Hylton's monthly child support obligation, we remand the case to the trial court to determine if any arrearages are owed after it has complied with Code §§ 20-108.1 and 20-108.2.  Tilley may be entitled to support pursuant to her petition for modification retroactive to the date that such petition has been given to Hylton.  See Code §§ 20-74, 20-108.

## III.  CONTEMPT

> [A]ny order of court requiring support of a spouse or children shall remain in full force and effect until reversed or modified by judgment of a superior court, and in the interim the order shall be enforceable by the court entering it and the court may punish for violation of the order as for contempt. . . .

Code § 20-68.

> Obviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected in a manner provided by law.  Consequently . . . where the court has jurisdiction of the parties and of the subject matter of the suit and the legal authority to make the order, a party refusing to obey it, however erroneously made, is liable for contempt.  Such order, though erroneous, is lawful within the meaning of contempt statutes until it is

- 9 -

> reversed by an appellate court. . . . Of course a party cannot be guilty of contempt of court for disobeying an order which the court had no authority of law to make, but if a court has jurisdiction of the parties and legal authority to render the order, then it must be obeyed even though it was erroneous or improvidently entered.

Robertson v. Commonwealth, 181 Va. 520, 537, 25 S.E.2d 352, 359 (1943) (citations omitted); see also Potts v. Commonwealth, 184 Va. 855, 861, 36 S.E.2d 529, 531 (1946) ("[a] dissatisfied litigant should challenge the correctness of an adverse judgment or ruling by an appeal and not by disobedience of such order or by interfering with or obstructing the judicial processes").

By its orders of June 6, 1996 and August 20, 1996, the court ordered Hylton to pay child support of $625 per month. Although we remand for the purpose of calculation of the presumptive amount of support and written justification of deviation from that amount, Hylton was not permitted to ignore the court's support order. Hylton's failure to comply was in violation of both orders, and the court did not abuse its discretion in finding him in contempt.

### IV.  ATTORNEY'S FEES

Similarly, it was not an abuse of discretion to order Hylton to pay attorney's fees to Tilley in the amount of $1,000. The awarding of attorney's fees is a matter within the sound discretion of the trial court. See Graves v. Graves, 4 Va. App. 326, 357 S.E.2d 554 (1987); D'Auria v. D'Auria, 1 Va. App. 455,

340 S.E.2d 164 (1986).  There has been no showing of an abuse of the trial court's discretion.

## V.  JUDICIAL BIAS

Upon review of this record, we find absolutely nothing to support a claim of judicial bias.

## VI.  CONCLUSION

Based upon the foregoing, we affirm the trial court's finding that Hylton's termination from his employment was voluntary, and we affirm the trial court's award of attorney's fees.  We hold that the trial court erred in failing to calculate the presumptive amount of child support and in failing to provide a written explanation for a deviation from the child support guidelines, and we reverse and remand with directions to comply with Code §§ 20-108.1 and 20-108.2.

Affirmed in part,
reversed and remanded,
in part.